## Coopersmith v. Rose et al.

*Smith, Paff, Van Sickle & Fishbone* and *Calvin F. Smith,* for plaintiff.

*Nathan L. Reibman,* for defendants.

WOODRING, J., June 11, 1951.— We are herein concerned with two motions made in an arbitration proceeding subsequent to the award. The award was in favor of plaintiff. Defendant filed his motion for a rule to show cause why the award should not be modified or corrected. Thereafter, plaintiff applied to the court for an order confirming the award. We will consider both motions in this opinion.

A brief summary of the facts, as contained in the transcript of testimony, which is in excess of 400 pages, and in a large number of exhibits, is as follows:

Defendant acquired a building lot in the City of Easton and employed an architect to design a home to be erected thereon. Plans and some specifications were prepared and submitted to contractors for estimates of cost. Plaintiff is a contractor and after receipt of the plans wrote a letter (exhibit 3) to defendant on August 15, 1947, in which he said:

"We hereby submit our estimate of Fourteen Thousand Dollars ($14,000.00) for the furnishing of all Labor, Materials, plant and equipment to complete this project."

Plaintiff then described the proposed method of construction, which proposal differed from the plans and specifications. Plaintiff's letter closes with:

"We trust that the above meets with your approval and that we may be favored with your order."

On August 18, 1947, plaintiff, contractor, and defendant, owners of the premises, entered into a written contract under seal on a form of the A. I. A. (American Institute of Architects), wherein the contractor agreed to provide all the materials and perform all the work for the construction of a residence. Article IX provides:

"It is hereby mutually agreed between the parties hereto that the sum to be paid by the Owners to the Contractor for said work and materials shall be cost of labor and materials directly employed in the work plus 10%. . . ."

Article XII provides:

"In case the Owners and contractor fail to agree in relation to matters of payment . . . then the matter shall be referred to a Board of Arbitration to consist of one person selected by the Owners, and one person selected by the Contractor, these two to select a third. The decision of any two of this Board shall be final and binding on both parties hereto."

The contract fails to provide a completion date and Article V authorizes the owners to terminate the employment of the contractor after three days' written notice and upon the certification of the architect and to employ other persons to finish the work.

Work on the building commenced in the fall of 1947, and continued into the month of December, at which time it was suspended because of inclement weather.

Operations were recommenced in the spring of 1948, and continued into November or December of that year, at which time the residence building was substantially completed. During the building operation plaintiff submitted bills and statements of account for labor and materials on October 20, 1947, in the amount of $4,828.51; June 5, 1948, in the amount of $12,516.60, and on June 29, 1948, in the sum of $2,885.46. These bills were all paid with the exception of the 51 cents of the October 20, 1947 bill, in the total sum of $20,-230.06. On August 2, 1948, plaintiff submitted a works progress statement in the sum of $2,744.08, and a 10 percent commission statement to that date in the sum of $2,297.47. On December 10, 1948, plaintiff submitted a final bill in the sum of $12,167.28, for labor and material, and $3,239.78, for the 10 percent commission. Plaintiff totals this bill in the sum of $14,907.07 (our addition would indicate that the correct total is $15,407.07.)

It is to be noted that no formal or substantial protest was made by defendant upon receipt of the bills of October 1947 and June 1948, and none was made upon receipt of the progress statements of August and October 1948. Subsequent to receipt of the final bill, the architect wrote plaintiff on December 29, 1948, which letter includes as follows:

"We can find nothing which would justify the tremendous difference between your estimates and the staggering bill which you finally presented. . . . Wilful neglect of your obligation to Mr. Rose has resulted in unreasonable hardship and embarrassment to all concerned."

The letter concludes by advising plaintiff that defendant "is turning the matter over to his attorney."

Plaintiff instituted an action in the Court of Common Pleas of Northampton County to recover the amount of the final bill, together with interest. De-

fendant objected to the action of assumpsit and contended that under the submission clause contained in the contract the question of payment should proceed to arbitration. The court, Woodring, J., by opinion dated June 28, 1949, directed the parties:

"To proceed with arbitration in accordance with the terms of the written contract dated August 18, 1947, and with the provisions of the Act of Assembly of 1927, P. L. 381, as amended."

Arbitrators were appointed and hearings commenced November 9, 1949, and concluded April 26, 1950. The arbitrators made their award February 21, 1951, as follows:

"The arbitrators . . . do award in favor of George Coopersmith, and against Joseph Rose and Freda M. Rose the sum of $14,082.07, with interest calculated at the rate of six per cent per year, beginning March 15, 1951."

This amount is the full amount of plaintiff's claim, less $825, which is credited because of defective or inadequate work in such matters as: placing of gravel fill, the making necessary the sanding of the floor, failure to protect finished surfaces while other work was going forward, failure to properly waterproof and soundproof, door defects, ceiling defects, placing of beams, bricklaying errors, and failure to complete drains. Defendant filed exceptions to the award and obtained a rule to show cause why the award should not be modified or corrected. Defendants' exceptions to the award are four in number and may be summarized as follows:

1. That the arbitrators erred in rejecting exhibit no. 3, plaintiff's letter of estimate, under the parol evidence rule;

2. The arbitrators ignored defendants' exhibit D, the architect's letter of November 5, 1948;

3. The arbitrators ignored the fact that other contractors were engaged (to complete the building) and that payments made to plaintiff were only made on account;

4. The arbitrators ignored their responsibility imposed by article 3 of the contract which article provides: "No alterations shall be made in the work except upon order of the architect. . . ."

Before further considering defendants' several exceptions, we will turn out attention to the law of arbitration. Arbitration is not to be considered merely an additional phase of litigation but is a complete remedy in itself. A board of arbitrators is an independent forum, excepting as otherwise provided by statute. Speaking of the finality of an arbitration award Blackstone's Commentaries, vol. 3, sec. 16, page 1036, contains:

"This decision, in any of these cases, is called an award. And thereby the question is as fully determined, and the right transferred or settled, as it could have been by the agreement of the parties or the judgment of a court of justice."

The late Chief Justice Maxey in his opinion in Shannon et al. v. Pennsylvania Electric Company, 364 Pa. 379, 72 A. (2d) 564, cites with approval an excerpt from 2 R. C. L. 392, as follows:

" 'The general rule undoubtedly is that, unless restricted by the agreement of submission, arbitrators are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either. And this is the reasonable view, for a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally.' "

See also Goldstein et al. v. International Ladies Garment Workers Union et al., 328 Pa. 385, 196 Atl. 43; Canuso v. Philadelphia, 326 Pa. 302, 192 Atl. 133; Application of Westinghouse Air Brake Co., 166 Pa. Superior Ct. 91, 70 A. (2d) 681.

The Act of April 25, 1927, P. L. 381, 5 PS §161, et seq., places an award on the same footing as the verdict of a jury: Pennsylvania Turnpike Commission v. Smith, et al., 350 Pa. 355, 31 A. (2d) 139; McDevitt, Exr. v. McDevitt, 365 Pa. 18, 73 A. (2d) 394; Shannon v. Pennsylvania Electric Company, supra.

Section 11 of the Arbitration Act of April 25, 1927, P. L. 381, authorizes the court to modify or correct an award:

"(d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict."

From the foregoing it is evident that at common law the arbitrators were the sole judges of the facts and the law and that their award was final. Under the Act of 1927, however, questions of law may be reviewed by the court and where the award is against the law, the court may modify or correct the award in those cases where, if the award had been a verdict of the jury, the court could have entered different or other judgment notwithstanding the verdict. It would seem necessary at the outset to determine whether the instant arbitration is at common law or under the act of assembly.

The act of 1927 provides that an arbitration clause in any written contract, except a contract for personal services, is valid, irrevocable, and enforcible. The submission clause in the instant contract provides that the decision of the board shall be final and binding. That language would seem to indicate that the arbitration proceedings should be at common law since

under the Act of 1927 the decision of the board is not final but is subject to some limited court review. We have found no Pennsylvania case which squarely decides this question but, in Application of Westinghouse Air Brake, supra, and McDevitt v. McDevitt, supra, the submission clauses provided that the decision of the board should be final and binding. In both of those cases the Act of 1927 was applied. Furthermore, in the instant case, the parties have from the very beginning assumed that the Act of 1927 should apply in this case. We will continue that assumption which, in any event, can do no harm to defendant, but is to his advantage to the extent that it affords him a judicial review of the award.

The paramount question of law which defendant raises by his first exception is, to what extent the contents of exhibit 3, plaintiff's letter of estimate, may be considered to vary the terms of the written contract of August 18, 1947, exhibit 1? By exhibit 3 plaintiff submitted his estimate for the building of the house at a cost of $14,000. That offer, if it was intended to be a binding offer, might have been accepted by defendant and would thereby have matured into a binding contract. Such acceptance, however, was never made. Instead, the parties entered into the contract, exhibit 1, which is silent as to the $14,000 figure and substitutes therefor that the sum to be paid by the owner to the contractor shall be "cost of labor and materials plus 10%".

Although in the past there has been some confusion on the parol evidence rule in Pennsylvania, today that law seems to be settled by a long line of decided cases. Where an examination of a written contract shows that the agreement is apparently complete without any uncertainty as to the object or the extent of the engagement, it will be conclusively presumed that the parties have put their whole engagement in writing

and that, unless fraud, accident or mistake are averred, the contract will be so treated and parol evidence to add to or subtract from it will not be received: First National Bank of Scranton v. Payne, 349 Pa. 446, 37 A. (2d) 568; Gianni v. Russell & Co., Inc., 281 Pa. 320; Pennsylvania Co., etc., to use, v. Lebanon Building & Loan Association, 337 Pa. 316, 10 A. (2d) 418; Sukonik v. Shapiro, 333 Pa. 289, 5 A. (2d) 108; Schar v. Maier et al., 355 Pa. 153, 49 A. (2d) 387; Grubb v. Rockey, 366 Pa. 592, 79 A. (2d) 255.

An examination of exhibit 1 discloses that it is complete on its face and that it was carefully made by numerous strike outs and interlineations. At no time in the extended proceedings has defendant ever alleged or contended that exhibit 1 was entered into by fraud, accident or mistake, or that any of the essential terms of the agreement were omitted. Under these circumstances we have no alternative under the established law than to sustain the legal conclusions of the board wherein it held that the subject matter of the letter of estimate, exhibit 3, could not be considered to vary the terms of the contract. That decision leaves us with a cost-plus contract on which plaintiff has done his work and for which he has submitted his statements for labor and materials and commission. At this point plaintiff has established a prima facie case and the burden of going forward to prove the inaccuracy of any of the items on the several statements falls upon defendant. Despite the protracted hearings defendant has never attempted to challenge any item of labor or material in plaintiff's statements. It would seem clear, therefore, that the award had to be in favor of plaintiff.

The three remaining points of exception need not be considered separately. They pertain to questions of fact and as we have already pointed out the arbitrators are the sole judges of the facts. That the board carefully weighed all of the testimony is apparent

from its well considered report and in the further fact that it reduced the amount of plaintiff's claim by the sum of $825, to allow for imperfect and unsatisfactory work.

One further question requires comment, although not brought to our attention by either of the parties. That is the question of interest. The board awarded interest at the rate of six percent per annum from March 15, 1951. It appears to us that this withholding of interest until March 15, 1951, was arbitrary and unlawful and that interest should have been allowed from the time that the moneys became due, on or about December of 1948. A similar question was raised in Canuso et al. v. Philadelphia, supra, in which case both sides excepted to the award. The court, by Mr. Justice Drew, said:

"Whenever a fixed sum of money is wrongfully withheld from a party to whom it is properly due such party is entitled to interest. West Republic Mining Co. v. Jones & Laughlins, 108 Pa. 55; Gloeckler v. Imrie, 118 Pa. Superior Ct. 441. Since the court below refused to allow interest for the period since July 19, 1932, its judgment must be modified accordingly."

Under that authority it would seem that in the instant case interest should have been allowed from on or about December 1948. Unlike the facts of the Canuso case, however, plaintiff has filed no exception to the award but rather has applied for a confirmation thereof. We will accordingly grant plaintiff's motion and confirm the award.

### Order of Court

And now, to wit, June 11, 1951, defendants' rule to show cause why the award of the arbitrators should not be modified or corrected is denied and dismissed, and plaintiff's motion is hereby granted and the award of the arbitrators made February 21, 1951, in favor

of George Coopersmith against Joseph Rose and Freda M. Rose, in the sum of $14,082.07, with interest at the rate of six percent per year beginning March 15, 1951, is hereby confirmed, and the Prothonotary of Northampton County is directed to enter and index a judgment for plaintiff and against defendants in accordance with the foregoing opinion and this order of court.