**DAVID DAVIES, INC., Plaintiff, v. SENSENBRENNER et, Defendants.**

Common Pleas Court, Franklin County.

No. 190446.  Decided January 25, 1957.

Russell Leach, City Atty., Alba L. Whiteside, Asst. City Atty., for defendant.

John L. Davies, for plaintiff.

## OPINION

By GESSAMAN, J.

The petition in this case was filed against the defendant, Maynard E. Sensenbrenner and five other individuals as members of the Board of Health of the Columbus Ohio City Health District and the City of Columbus.

On November 7, 1956, all of the defendants, except the City of Columbus, Ohio, were dismissed by mutual agreement.

The substance of the petition is that during the period between May 1, 1947 and October 31, 1953. the plaintiff paid to the defendant, City of Columbus, the sum of $145,785.95, as inspection fees for the inspection of meat and meat products, all of which fees were assessed against plaintiff by virtue of the provisions of Regulation 70-2 and the

amendments thereto, adopted by the Board of Health of the Columbus City Health District on and subsequent to November 30, 1947. The plaintiff prays judgment against the defendant, City of Columbus, in the amount above indicated.

The answer of the defendants sets up five defenses, the first one of which is a general denial. The second one alleges that there was sufficient authority for the establishment of meat inspection and the fees charged therefor. The third defense alleges that these inspection services were accepted by the plaintiff; that such inspections were a necessary adjunct of the plaintiff's business; that the inspection services were reasonably worth the sum paid by the plaintiff and that by reason of these facts, the plaintiff is estopped to deny the validity of the assessments. The fourth defense is that the plaintiff is guilty of laches and the fifth defense sets up the defense of the Statute of Limitations.

It is conceded that this law suit was inspired by the decision of the Court of Appeals of this district in the case of **Brunner, d. b. a. etc. v. Rhodes, Mayor et al, 95 Oh Ap 259; 53 O. O. 193.** A motion to certify the record in that case was overruled by the Supreme Court on October 21, 1953. In that case the Court of Appeals held that a city board of health was without authority to prescribe a regulation requiring the payment of inspection fees by meat packers. The plaintiff, it is alleged and admitted, operates a meat packing plant. The fees involved in that case are the same type and were levied and assessed under authority of the same regulation as those in the case at bar.

In the last paragraph of the opinion in the Brunner case, we find the following language:

"It may be that because of our findings, plaintiffs, as a matter of law, are entitled to an order requiring the defendants to return the money paid to them as inspection fees under the ordinances. We are disposed to exercise whatever discretion we have in refusing to make such an order as to all sums paid under protest, first, because it would be futile, and, second, because it would not be equitable. The plaintiffs have received full value for the funds paid for inspections. * * *"

Considering the fact that the Brunner case was an action for a declaratory judgment, it would seem, at first blush, that the language of the Court of Appeals would be authority for a recovery of the fees paid, in an action at law. It is true that the Court of Appeals held that the inspection fees, which had been paid by the plaintiffs in the Brunner case, were paid under protest and were therefore involuntary payments. Since the payments made by the plaintiff in the case at bar were made with substantially the same type of protest, we conclude that they likewise were involuntary payment. We consider it quite essential, however, that this Court carefully weigh the language of the Court of Appeals in the Brunner case, to the effect that it would not be equitable to order the return of the money paid to the plaintiffs as inspection fees for the reason that the plaintiffs "have received full value for the funds paid for the inspections." The same finding must be made in the case at bar. We base that conclusion not upon the finding of the Court of Appeals in the Brunner case alone, but also upon paragraph 14 of the Agreed

Statement of Facts which discloses that 85% of the meat and meat products sold by David Davies, Inc. were sold in cities and communities where the inspection of meat was required either by regulation or ordinance, or by the stores to which the meat and meat products were sold. The Agreed Statement of Facts further substantiates that the meat inspection service was rendered in full during the period in question.

These facts, in our opinion, give rise to the application of a principle which was enunciated by the Supreme Court of Ohio in the case of State, ex rel. Hunt, Prosecuting Attorney, v. Fronizer et al, 77 Oh St 7, at page 16 of the opinion:

"This court is of opinion that such recovery is not authorized. The principle applicable to the situation is the equitable one that where one has acquired possession of the property of another through an unauthorized and void contract, and has paid for the same, there can be no recovery back of the money paid without putting, or showing readiness to put, the other party in statu quo, and that rule controls this case unless such recovery is plainly authorized by the statute. The rule rests upon that principle of common honesty that imposes an obligation to do justice upon all persons, natural as well as artificial, and is recognized in many cases. Chapman v. County of Douglas, 107 U. S. 348; Lee v. Board of Commissioners, 52 C. C. A., 376; Bridge Co. v. Utica, 17 Fed. Rep., 316."

It is true that in the Fronizer case, the Prosecuting Attorney was attempting to recover for the county, money which had been spent under a void contract. That is the reverse of the situation involved in the case at bar. The principle, however, in our opinion, is the same, and applies equally to the case at bar. The plaintiff, David Davies, Inc., acquired possession of something of value which had been performed by the Board of Health of the City of Columbus under a regulation which later was declared to be void. It is impossible for the plaintiff to put the Board of Health in status quo. Therefore, under the principle announced in the Fronizer case, there should be no recovery. As the Supreme Court said: "The rule rests upon the principle of common honesty that imposes an obligation to do justice upon all persons, natural as well as artificial, and is recognized in many cases." This rule was followed in the case of Herzig et al, v. Hunkin Conkey Construction Company, 60 Abs 313. In the latter case Judge Carter makes the following observation in his concurring opinion on page 316:

"The rule that the plaintiffs must place, or show readiness to place the other party in statu quo, applies to actions based on fraud, as well as violations of the statutes or ordinances by public officials in the entering into the same. To this effect see Donnelly on Public Contracts, paragraph 248, page 360, where the author states that the prevailing rule is to this effect."

In view of the fact that the plaintiff has received full value for the funds paid for inspections and in view of the further fact that it is obviously impossible for the plaintiff to put the defendant, Board of Health, in status quo, it is our opinion that the rule of the Fronizer case should be applied and that the plaintiff should be denied the right to recover the money paid for inspection.

There is a further reason why the plaintiff may not recover in the case at bar. In the case of **State, ex rel. Mowrer v. Underwood et al, 137 Oh St 1**, we find the following syllabus:

"When the state, by legislative enactment, withdraws from cities the health powers previously granted to them and transfers them to newly created city health districts, such health districts become agencies of the state government, and their employees are governed by state law."

The opinion of the Supreme Court as to status of City Health Districts is declared with no uncertainty in the following language found on page 5 of the opinion:

"This. in our opinion, evidences a legislative intent to withdraw from municipalities the powers of local health administration previously granted to them, and to create in each city a health district which is to be a separate political subdivision of the state, independent of the city with which it is coterminus, and to delegate to it all the health powers thus withdrawn from municipalities. As such, the city health district becomes an agency of the state and is governed by the laws of the state."

The Court of Appeals of this district in the case of Brunner v. Rhodes, supra, recognized this same fact in the use of the following language found at page 272 of the opinion:

"Especially is this true inasmuch as the Hughes and Griswold Acts made the health districts which they created agencies of the state government. **State, ex rel. Mowrer, v. Underwood et al, Civil Service Commission of the City of Akron, 137 Oh St 1**, 27 N. E. (2d), 773."

As early as 1921 the Supreme Court considered the health laws in question in the case of **State, ex rel. City of West Park v. Zangerle, Auditor, 103 Oh St 566.** In this case the City of West Park by an action in mandamus was seeking a writ commanding the Auditor to turn over to it, the City of West Park, certain monies collected by him. At page 584 of the opinion, the Court held as follows:

"If it should be conceded that this contention is sound, then we think it is clear that under the statute the health district would be entitled to the money, and not the municipality."

The fact that the fees involved in the case at bar were paid by the plaintiff to the Treasurer of the City of Columbus is of no importance for by virtue of the provisions of §1261-38 GC. "The treasurer of a city which constitutes a health district shall be the custodian of the health fund of such city health district." The Treasurer of the City of Columbus, therefore, in accepting and receiving the fees from David Davies, Inc., was accepting and holding them as custodian of the health fund of the "City Health District." He did not receive or hold them for the City of Columbus.

In addition to providing that the Treasurer shall act as custodian of the funds of the Health District, the General Assembly also provided in §1261-38 GC, that the auditor of a city which constitutes the City Health District, shall act as the auditor of the City Health District It provided further in the same section that the expenses of a board of health or health department of a city health district, shall be paid on the warrant of the auditor of the city issued on vouchers approved by

the Board of Health or the Health Department of the City Health District and signed by the City Health Commissioner. Furthermore, in §4418 GC. the Legislature provided in part that "all fines collected under this chapter shall be paid to the treasurer of a municipality and credited to the Sanitary Fund of the Board of Health instituting the prosecution."

It is true that §4451 GC, provided that "When expenses are incurred by the board of health under the provisions of this chapter, upon application and certificate from such board, the council shall pass the necessary appropriation ordinances to pay the expenses so incurred and certified." The duty thus imposed upon the council of a city does not, in our opinion, alter the independent status of a city board of health. Sec. 4451 GC, was in effect when all of the decisions above referred to were handed down.

It is our opinion, therefore, that all of the monies paid by David Davies, Inc., as meat inspection fees during the period in question were paid to the Treasurer of the City of Columbus as custodian for the Columbus City Health District and that the latter was a political entity separate and apart from the City of Columbus.

In Par. 16 of the Agreed Statement of Facts, it is stipulated that "all of the fees collected from meat inspection were dispersed in payment of the expenses of the Meat Inspection Division of the Board of Health in the same manner as were all disbursements made by the City of Columbus and the deficit was paid by additional appropriation from the General Fund of the City of Columbus." Granting that we may assume that because of the receipt of fees by the Board of Health, the defendant, City of Columbus, received smaller demands for appropriations under the provisions of §4451 GC, and thereby received some indirect benefit from the fees that were paid by David Davies, Inc., we are of the opinion that such indirect benefit, if any, cannot be the basis of a judgment against the City of Columbus for the amount of the fees paid by the plaintiff. A judgment against the City of Columbus could not be based upon such an indirect benefit.

Counsel for the plaintiff have contended that the meat inspection service was a city operation because of, among other things, three ordinances passed by the council of the City of Columbus as set forth in Exhibits E, F and G, which are attached to the Agreed Statement of Facts. Exhibit E is Ordinance No. 204-47 "to establish a meat inspection fund." The substance of this ordinance is that all meat inspection charges paid to the City Treasurer shall be credited to the Meat Inspection Fund and that the City Auditor be authorized to establish such fund. Exhibit F is Ordinance No. 286-47 "to make appropriations for the seven months period beginning June 1, 1947, and ending December 31, 1947, for the Meat Inspection Fund." This ordinance appropriated monies from the Meat Inspection Fund to certain operating purposes specified in the ordinance and provided the methods by which the money would be withdrawn from the funds. In view of the status of the City Health District, it is questionable as to whether or not this ordinance was essential. It does not however, alter the independent status of the City Board of Health. The same observation may be made of Exhibit G which is Ordinance No. 2-48 "to establish certain divisions in the Department of

38

Health and Sanitation and provide for appropriations thereto." None of these acts of City Council could change the status of the City Board of Health.

It is our opinion, therefore, that the defendant, City of Columbus, is not and cannot be held liable for the monies paid by the plaintiff to the City Treasurer as custodian for the City Board of Health.

For the reasons given, it is our opinion that the plaintiff may not recover in this action. In view of the fact that a jury has been waived and the case has been submitted to the Court upon the pleadings and the Agreed Statement of Facts, the Court finds in favor of the remaining defendant, the City of Columbus. An entry may be drawn accordingly and exceptions noted.