546 A.2d 615

**George HADE, Appellee,**

v.

**NATIONWIDE INSURANCE CO., Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 20, 1988.

Decided Aug. 26, 1988.

228

William B. Brooks, Joseph A. Whip, William H. Bradbury, III, Norristown, for appellant.

Gustine J. Pelagatti, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

Appellant, Nationwide Insurance Company, appeals from the order of the Superior Court, 349 Pa.Super. 541, 503 A.2d 980 which affirmed the order of the Court of Common Pleas of Philadelphia County denying appellant's petition to vacate or modify an arbitration panel's award of $300,000.00 entered against Nationwide and in favor of its insured, George Hade. This Court granted appellant's petition for allowance of appeal on the limited issue of whether the arbitrators exceeded the scope of their authority in entering this award.

The relevant facts of this case are as follows. Shortly after midnight on June 10, 1984, George Hade, while riding his motorcycle, was struck by a van driven by an uninsured motorist. At the time of the accident Hade was employed

as a tractor trailer operator. As a result of the accident Hade suffered multiple fractures and injuries, including a severe ankle fracture, which, in the opinion of his physician, rendered him substantially impaired and totally unable to work as a tractor trailer operator.

At the time of the accident Hade's motorcycle, along with his three automobiles, were covered by four motor vehicle liability insurance policies issued by Nationwide. These policies provided that Hade had uninsured motorist coverage in the amount of $15,000.00 per policy. In April of 1984, two months prior to the accident, Hade requested his agent to increase his liability coverage to $100,000.00 per policy. The crux of this appeal pivots on the determination of whether Hade also instructed his agent to increase his uninsured motorist coverage to the same amount.

Neither party could agree on the amount of damages to be recovered under the uninsured motorist clause of the policies. Therefore, as provided by the arbitration provision contained in the policies, a hearing was held on January 30, 1985, pursuant to 42 Pa.C.S. § 7341,[1] relating to common law arbitration. This provision provides as follows:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

At the conclusion of testimony taken by the three member panel, a majority of the panel awarded appellee the sum of $300,000.00.[2]

1. Act of July 9, 1976, P.L. 586, No. 142, § 2 *as amended.*

2. The arbitration provision of the policies provided that each party shall select a competent and disinterested arbitrator and the two shall then select the third arbitrator. Since the parties could not agree on a third member, the court appointed this arbitrator. The arbitrator chosen by Nationwide dissented from the award and would have awarded appellee $60,000.00: this was the amount he believed was the

At the arbitration hearing counsel for appellee proffered two alternate theories of recovery for the panel's consideration: (1) that the agent simply failed to increase Hade's uninsured motorist coverage to the $100,000.00 per policy level concomitant with the increase in the liability coverage; or (2) the agent intentionally misled appellee regarding the extent of his uninsured motorist coverage. Appellant, on the other hand, argued that the arbitrators must confine themselves to the stated terms of the insurance policies and restrict recovery to $60,000.00 which represented the limit of the stacked policies. Since, as customary, no written opinion accompanied the award, it is difficult to determine the exact basis of the arbitrators' decision.

On appeal the Superior Court rejected the contention that $300,000.00 was excessive and affirmed the amount of the award. The court found that the award in large part was compensation for the agent's misleading conduct which resulted in appellee's misunderstanding as to the extent of his coverage. Additionally, the court stated that any issue related to coverage is within the scope of the arbitration clause, and that a dispute is only outside the clause if it can be said with "positive assurance" that the clause never intended to encompass such an issue. Moreover, the court held that under the facts of the case it could not say with "positive assurance" that the agreement to arbitrate disputes over coverage did not include the misleading acts of appellant's agent; and since the agent's conduct went directly to the issue of coverage, the court found a rational relationship between the two and upheld the award.

Appellant then filed a petition for allowance of appeal, which we granted. We now affirm the order of the Superior Court, but disavow the rationale applied by that court.

■ Judicial review of common law arbitration is very narrow. As noted above, the award of an arbitrator in a common law arbitration is binding and may not be vacated or modified "unless it is clearly shown that a party was

maximum available after stacking under the stated terms of the policies.

.

denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." 42 Pa.C.S. § 7341. Moreover, the award is not reviewable on the basis of error of law or fact by the arbitrators. *Runewicz v. Keystone Insurance Co.*, 476 Pa. 456, 383 A.2d 189 (1978); *Flamini v. General Accident Fire and Life Assurance Corp.*, 328 Pa.Super. 406, 477 A.2d 508 (1984). As provided in the arbitration clause of the policies, the scope of the arbitrators' power is limited to a determination of the insured's right to recover damages or the amount of damages in accordance with the limits of coverage set forth in the policy. *See Pennsylvania General Insurance Co. v. Barr*, 435 Pa. 456, 257 A.2d 550 (1969).

We now turn to the record testimony to determine upon what basis the arbitrators could have concluded that appellee was covered to the extent necessary to justify the award. During the hearing the arbitrators heard testimony primarily from the agent, Peter Polachek, and the appellee. The agent testified that at the time Hade requested the increase to $100,000.00 per policy in liability coverage, he did not specifically request that the uninsured motorist coverage be increased to the same level.[3] However, Hade's recollection of the conversation differed quite markedly, as evidenced by the following testimony:

Q: And you had a conversation with Mr. Polachek?

A: Yes.

Q: And what was the substance of the conversation?

A: I told him that I was informed that I could have at least 100—300,000 liability on my cars and my motorcycle, plus 100—300,000 uninsured motorist on all my vehicles, plus the bike.

Q: You told him you were informed. What was his response?

---

**3.** At the agent's deposition, taken approximately three months prior to the hearing, Mr. Polachek was less than clear when asked basically the same question. Rather, he just stated he did not recall the request. The deposition was offered for impeachment purposes only.

A: He said yes, that was right.

Q: Did you say anything after that?

A: I said that I would like to have that.

Q: What did he say?

A: He said okay.

Q: What did you assume after that conversation?

A: I was always led to believe that once we talked about it on the phone, I had that insurance.

Q: Was that your custom dealing with Mr. Polachek for 21 years?

A: Yes, it was.

Q: In other words, you relied on his word?

A: Yes.

N.T. at 86–7, January 30, 1985.

■ This Court has stated in the past that "[t]hrough the use of lengthy, complex, and cumbersomely written applications, conditional receipts, riders, and policies, to name just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent." *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 594, 388 A.2d 1346, 1353 (1978) *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979). Moreover, parol contracts for insurance are permitted in this Commonwealth. *Rossi v. Firemen's Insurance Co.*, 310 Pa. 242, 165 A. 16 (1932); *LeVan v. Pottstown, Phoenixville Railway Co.*, 279 Pa. 381, 124 A. 89 (1924).

The arbitrators were faced with a clear credibility issue, which they decided in favor of appellee. As the testimony quoted above demonstrates, appellee testified that he specifically requested his agent to increase the limit amount for his uninsured motorist protection and that the agent assured him that this coverage would be effected. This oral representation was consistent with appellee's course of dealings with the agent over a span of twenty years. He had come to rely on his agent when told that coverage was in place and it certainly was reasonable for him to expect the same.

Furthermore, following the close of testimony and final remarks, the arbitrators engaged appellant's counsel in a dialogue and posed several questions pertaining to appellee's alternate theories of recovery. Specifically, appellant's counsel, when asked if Nationwide would be bound by its agent's oral representation to increase appellee's uninsured motorist coverage to the requested limit, but through negligence failed to implement the increase, conceded that he believed the company would be committed to the increased amount.

Given the above concession by counsel, along with the testimony heard at the hearing, we view this award turning not upon any tort theory; rather it was based on the determination that *the coverage requested by appellee was in existence* at the time of the accident. It is conceded that the function of arbitrators is to first inquire into the type and amount of coverage under the policy in order to determine the insured's right to recover damages or the amount of these damages, in accordance with the limits of coverage set forth in the policy. In this case the arbitrators merely held that the increased coverage was effective at the time of the oral representation, and consequently awarded damages within the policy limits.

Accordingly, the order of the Superior Court is affirmed.

ZAPPALA, J., files a dissenting opinion.

ZAPPALA, Justice, dissenting.

I would hold that the insured's claim of negligence and/or intentional misrepresentation of Nationwide Insurance Company's agent relating to the procurement of additional coverage is not an arbitrable issue under the arbitration provision of this policy. For this reason, I would modify the arbitrator's award to reflect the stated policy amounts for uninsured motorist coverage—a total of $60,000. As to the claim of negligent and/or fraudulent misrepresentation by the agent, I would hold that jurisdiction over the claim properly lies with the court of common pleas.

The question of whether a dispute is within the terms of an arbitration agreement is for the court to determine, as

arbitrators have no power to determine the extent of their jurisdiction. *Flightways Corporation v. Keystone Helicopter Corporation*, 459 Pa. 660, 331 A.2d 184 (1975). Such agreements are to be strictly construed and should not be extended by implication. *Jacob v. Weisser*, 207 Pa. 484, 56 A. 1065 (1904); *Hassler v. Columbia Gas Transmission Corporation*, 318 Pa.Super. 302, 464 A.2d 1354 (1983).

The insurance policy in this case provided that the arbitrable issues would extend to disputes relating to an insured's right to recover damages or to the amount of damages. Allegations of negligent and/or intentional misrepresentations of an agent in obtaining additional coverage are obviously beyond the scope of the arbitrators' authority under this policy. Such allegations require the arbitrators to consider evidence outside the stated coverage limits of the policy itself.

Where the parties have clearly agreed to arbitrate matters, then every reasonable effort should be made to enforce such an agreement. This will effectuate the unmistakable intent of the parties. In compelling the parties in this case to arbitrate an issue, absent an agreement between them to arbitrate that issue, the Superior Court erred. The Superior Court's perceived justification for allowing the arbitrators to decide the issue of misrepresentation and to compensate the insured for an agent's acts is judicial economy. Economy may not be sought, however, at the expense of justice. The Superior Court's holding deprives litigants of their right to proceed before our courts in instances where arbitration was not contemplated.

Subsequent to its decision in this case, the Superior Court again addressed the identical issue in *Ostroff v. Keystone Insurance Company*, 357 Pa.Super. 109, 515 A.2d 584 (1984). In *Ostroff*, the arbitration clause was similar to that presented herein and stated, "If we and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle ... either party.may make a written demand for arbitration." Interpreting this provision, the Superior Court stated,

Therefore, the question before us is whether the arbitrators only had authority to interpret the terms of the policy itself or whether they also had authority to consider external evidence of fraud and misrepresentation and, if finding such evidence to be credible, in effect enlarge the coverage provided by the terms of the policy. We believe that the arbitrators were limited to interpreting the terms of the policy and that consideration of tort theories to enlarge the coverage limited on the face of the policy was improper.

357 Pa.Super. at 116–118, 515 A.2d at 588.

I agree with the Superior Court's analysis in *Ostroff* and would apply it to the present case. Confronted with its conflicting analysis in this case, the Superior Court attempted to distinguish it on the basis that the appellants in *Ostroff* had continually sought arbitration on the terms of the policy itself. This is a distinction without a difference.

The Superior Court's attempted distinction defies the principle of law that the parties cannot confer jurisdiction upon a forum. To the extent that the Superior Court's disparate treatment of *Ostroff* and the parties before us is based upon the parties' theory of their case, it is improper. More likely, however, the Superior Court's decision in *Ostroff* was intended to avoid perpetuation of the error made in this case. With that action, I heartily concur and would consistently apply that analysis to this case.